THE CAROLINA CENTRAL RAILROAD COMPANY v. JOHN C. McCASKILL.

*Betterments—Improvements—Railroads—Evidence—Notice— Burden of Proof.*

1. In a proceeding to ascertain the value of betterments under the statute (*The Code,* §§473–480,) the burden is upon the petitioner to show, not only that he believed, but that he had good reason to believe, his title to the premises was good, (at least until he made out a *prima facie* case, when the burden shifted) and of the reasonableness of this belief the jury must be the judge ; and, *it seems,* the petitioner is competent to testify to his belief in the validity of his title.

2. The measure of the value of the betterments is not the actual cost of their erection, but the enhanced value they impart to the land, without reference to the fact that they were not desired by the true owner, or could profitably be used by him in the prosecution of his particular business.

3. The notice prescribed by the statute as a bar to the right to compensation is not a constructive notice, or such a notice as the petitioner might have acquired by a diligent scrutiny of the title, but such facts and circumstances as might reasonably suggest to the ordinary citizen serious defects in his own title.

4. The statutory remedy is available against an incorporated railroad company which has recovered possession of lands within its " right of way."

(*Justice* v. *Baxter*, 93 N. C., 405; *Reed* v. *Exum*, 84 N. C., 430; *Scott* v. *Battle*, 85 N. C., 184; *Merritt* v. *Scott*, 81 N. C., 385; *Wetherell* v. *Gorman*, 74 N. C., 603; *Daniel* v. *Crumpler*, 75 N. C., 184, and *Smith* v. *Stewart*, 83 N. C.. 406, cited).

Issues joined upon a petition for betterments, tried before *Clark*, *Judge*, at January Term, 1887, of ROBESON Superior Court.

This action was brought to recover possession of a specified parcel of land, part of the right-of-way of the plaintiff company, situate in the town of Shoe Heel. The pleadings raised issues of fact. There was a trial, and the plaintiff obtained judgment, whereupon the defendant filed his petition in the action, as allowed by the statute, (*The Code*, §473,) alleging that he, while holding the premises under color of title, believed by him to be good, made permanent improvements thereon by erecting a large brick store-house, at the cost of about thirty-five hundred dollars, and praying that he be allowed for the same over and above the value of the · use and occupation of such land by him, &c. The plaintiff filed its answer thereto, denying the material allegations thereof, the right of the defendant to the relief demanded, or any such relief, &c., thus raising issues of fact.

Afterwards, the Court submitted issues to the jury, which, with the responses thereto, are as follows:

" 1. Did McCaskill, while erecting the store, have reason to believe the title good under which he was holding the premises? Answer: ' Yes.'

2. How much is the value of the premises at this time, enhanced by such improvements? Answer: ' $3,000.'

3. How much is the value of the use and occupation of the lot? Answer: ' $50 per year.' "

The plaintiff requested the Court to submit the following

issue also, which it declined to do, and the refusal is assigned as error:

"Does the building erected by the defendant meliorate and improve the premises for the purposes of the plaintiff railroad?"

The following is so much of the case settled on appeal as it is necessary to set forth here:

"The defendant introduced a grant from the State to David Allison, dated June 27, 1795; deed from McCoy to Robert Hughes, dated August 11, 1851; deed from McCoy to Robert Hughes, dated July 1, 1834; deed from Caroline Gordon to John Patterson, dated January 19, 1866; deed from R. McMillian, sheriff, to Giles Leitch, May 27, 1877; deed from A. Leitch and wife to J. C. McCaskill, dated May 9, 1883; deed from Robinson to J. C. McCaskill, dated June 11, 1883.

It was proved that Giles Leitch was dead, and Mrs. Robinson and A. Leitch were his heirs.

The defendant testified that the deeds introduced cover the land recovered by plaintiff in this action; that he built the store; that the value of the land was enhanced by it $3,500; he began building in the fall of 1883 and finished in the spring of 1884; bought the land to build on it; built to edge of street, not knowing he would ever be troubled; the street between store and railroad track is a public street, and is fifty feet wide; there was an agent of railroad at depot, within a hundred yards of store; saw this agent every day; saw superintendent of railroad after, and talked with him before and while building store; no objection from either of them or any one else; ran his line by his deeds and it went to railroad ditch, within a few feet of track. Witness said he built the store, believing his title to be good (exception by plaintiff; overruled); that John Patterson and those under whom he claimed have been in possession ever since 1868 up to the time defendant took possession. There

is a public street in front of store, which crosses railroad at right angles. It is a brick store, 91 feet by 20 feet; store below and eight rooms above; what the store and lot would sell for now he cannot say; he thought deed ran to railroad ditch; did not disclaim title in this suit to land between store and railroad; did not deny being in possession of this lot; did take a deed in 1870 for a lot of land on opposite side of railroad, conveying the land up to edge of track; in that deed the railroad right of way was excepted in the warranty clause; no definite amount was excepted; understood that under that deed he did not have any claim for what plaintiff would condemn under its claims for right of way; always understood that on the opposite side of railroad, because the depot was located on that side, the right of way was a hundred feet and on this side thirty feet; built a house on opposite side within one hundred feet; could not find anywhere that the right of way had been condemned or otherwise acquired by railroad company; that he consulted counsel as to whether railroad company had any claim on the land, and in consequence of his conversation with counsel he believed that the railroad company, not having condemned the land, have no right to it; thought that railroad company only had the right to enough land to run on, except when it had been condemned; counsel consulted was attorney for Leitch, his vendor, and he said there was no record of condemning the land; there was a shanty five or six feet further off than store; did not try to get the land shanty was on from Jones; this shanty was used and claimed by railroad when he bought the land, and was on the same side of railroad as the store; does not remember, while building store, he was told by Sharpe, in presence of Parham, that he was building on right of way; never had any notice till suit was brought; building was then all complete, except painting inside; don't remember any conversation before roof was put on; did not offer other land to railroad for land this

shanty was on; went to Rowland, attorney, because he (witness) wanted posse-sion of shanty, and to know if there would be any trouble about it; shanty embraced in his deed; fair rental value of land on which store is located, not including rental of store, is $25 or $30 per year; Patterson's store was on land where my store is and was also nearer railroad than this store; the actual cost of brick store is $3,000.

Plaintiff introduced: former case on appeal to Supreme Court; judgment of Superior Court and judgment of Supreme Court; act incorporating Wilmington, Charlotte & Rutherford Railroad Company, 13th February, 1855; acts incorporating Carolina Central Railroad Company, 20th February, 1873 and 1881; deed from J. H. Pollar to Carolina Central Railroad, 17th May, 1873; deed from Stedman and Davis to French and others, 25th June, 1880.

Sharpe, a witness for plaintiff, testified that he told McCaskill he gave him notice that he was building on the right of way, and that McCaskill offered to give another piece of land for railroad right of way on this tract; the house was not then roofed and no floors.

S. W. Parham, witness for plaintiff, testified: Heard Sharpe tell McCaskill he was unfortunate that he had put his house on right of way; the walls were then up, but store not finished—no roof or floors; there were nine windows on side of store next to railroad; this was in February or March, 1884.

Jones, the superintendent, and witness for plaintiff, testified: McCaskill's store is on right of way of railroad company; the railroad has no use for it; the store is about fifty feet from track and within the hundred feet right of way, and it cannot be used for any railroad purpose; the store obstructs the view of track from persons traveling the street in front of the store, which street crosses the railroad.

Plaintiff then asked the following instructions:

1. That if the jury believe the evidence, they will respond to the first issue, No.

2. That if the jury believe the testimony, they will respond to the second issue, Nothing.

3. That if the Carolina Central Railroad had a house on the land and in actual possession of the same at the time he took his deeds, then he is presumed to know the extent and nature of the claim of the railroad to the same.

4. That if the jury believe the testimony, the house built by McCaskill was an obstruction and not an improvement.

5. That if the jury believe the evidence, McCaskill had no color of title to the premises.

His Honor gave plaintiff's third prayer for instructions, and charged the jury that if they found from the evidence that McCaskill, while erecting the store, had color of title, and that he not only believed, but had reason to believe, the title good, under which he was holding said premises, they would respond to the first issue, Yes; otherwise, No, as the burden was on the defendant to make out his claim by a preponderance of the evidence; that it was not what McCaskill believed, but what there was reason to believe; that McCaskill must not only believe his title good, but that, under the statute, he must have reason to believe it good, and that the jury must determine this from the evidence; that if the jury find the first issue, Yes, then they would say from the evidence, how much, if any, the value of the premises at this time was enhanced by such improvements; that they should only estimate such improvements as were made before notice given, if notice was given, and that such improvements should not be estimated by the actual cost in making the same, but by the enhanced value they gave to the premises; that if they found the first issue, No, then they need not consider the other issues; that if they found the first issue, Yes, then, after determining the second issue, they would pass to the third, and would determine from the evidence the clear annual value of the premises, exclusive of the addition to the rental value by reason of improvements put upon the

same by defendant from the 9th day of May, 1883, to date.

For the refusal to charge as requested and to the charge as given, the plaintiff excepted.

Motion for judgment upon the evidence *non obstante vere-dicto*, refused. Motion for new trial overruled; judgment for defendant; appeal by plaintiff."

*Messrs. P. D. Walker* and *J. B. Batchelor*, for the plaintiff.
*Messrs. F. McNeill & Wm. Black*, for the defendant.

MERRIMON, J., (after stating the case). The assignment of error in that the Court refused to submit to the jury the issue proposed by the defendant cannot be sustained, because the second issue submitted by the Court, in substance and effect, embraced the same inquiry proposed. The jury might have responded to the latter issue, that the alleged improvement did not enhance the value of the premises in any degree; the counsel for the defendant might, perhaps did, so argue to them, and the Court so, in effect, instructed them, in saying "that they should only estimate such improvements as were made before notice given, if notice was given, and such improvements should not be estimated by the actual cost in making the same, but by the enhanced value they gave to the premises." It is sufficient to submit the issue raised by the pleadings in such intelligent shape as will elicit the finding of the constituent fact or facts to be ascertained by it.

Nor has the objection that the defendant was allowed, in testifying on the trial in his own behalf, to say that "he built the store, believing his title to be good," substantial force. The latter part of the expression was rather incidental ; and moreover, it would seem, that where the belief of a party in a particular respect is directly in question, he being a competent witness in his own behalf, he might say what his belief was—his evidence in this respect to be heard and

weighed by the jury just as other evidence. But if this were not so, the Court, we think, obviated so slight an objection, by instructing the jury "that it was not what McCaskill (the defendant) believed, but what there was reason to believe; that McCaskill must not only believe his title good, but, under the statute, he must have reason to believe it good, and the jury must determine this from the evidence." This was strongly cautionary and explanatory.

The statute (*The Code.*, §§ 473, 476) provides, among other things, that "any defendant against whom a judgment shall be rendered for land, may, at any time before the execution of such judgment, present a petition to the Court rendering the same, stating that he, or those under whom he claims while holding the premises under a color of title, believed by him or them to be good, have made permanent improvements thereon, and praying that he may be allowed for the same, over and above the value of the use and occupation of such land, &c. * * * * * If the jury shall be satisfied that the defendant, or those under whom he claims, made on the premises, at a time when there was reason to believe the title good under which he or they were holding the said premises, permanent and valuable improvements, they shall estimate in his favor the value of such improvements as were so made before notice, in writing of the title under which plaintiff claims, not exceeding the amount actually expended in making them, and not exceeding the amount to which the value of the premises is actually increased thereby at the time of the assessment."

Now, applying this statutory provision, it was properly conceded on the argument by the counsel of the plaintiff, that the defendant, on the trial, showed color of title while holding the premises "and constructing the alleged improvement;" but they earnestly contended that the latter had reason to believe that the title, under which he and those under whom he claimed, were holding the premises while erecting

the alleged permanent improvement thereon, was not good, and therefore he was not entitled to any allowance for supposed betterments.

On the trial, the defendant, by evidence not controverted, showed title in himself *prima facie*, to and his possession of the land in question, and nothing to the contrary appearing, he had reason and the right to believe, and it must be taken that he did believe, his title was good while he constructed the alleged improvement.

Thus much having been shown, the burden was on the plaintiff to show otherwise and to the contrary. There was no positive evidence to prove that the defendant had actual knowledge, affording reason to believe his title was not good; on the contrary, it was in evidence that he was advised by counsel, in whom he might confide as to such matter, that his title was good. But it is insisted that he was charged sufficiently with constructive notice; that there was evidence, not controverted, of matters, things and transactions, of which he at least had constructive knowledge, which from the beginning of his supposed title, constituted reason to believe his title was not good.

In view of the evidence produced on the trial, and a proper interpretation of the statutory provision cited, we cannot accept that view as tenable. This provision is highly remedial—not intended to favor one party to the prejudice or disadvantage of another—but to place the parties interested, as nearly as may be justly, as they would have been, but for the honest, not unreasonable, misapprehension and mistake of the claimant in placing permanent and valuable improvements on land he had possession of and color of title for, really believing he had a good title for it. By the words "reason to believe the title good," &c., is not meant that the party claiming the allowance has merely constructive notice, or that by diligent scrutiny he might have learned of defects in his title, or by such notice and

scrutiny a better title in some other person, but facts and circumstances, such as would and ought reasonably to suggest to the particular claimant defects in his title. Hence, the Chief Justice said with pertinent force in *Justice* v. *Baxter,* 93 N. C., 405, that "the benificent provisions of the statute would be defeated by a construction which charges the *bona fide* claimant, under a deed in form and purpose purporting to convey a perfect title, with a knowledge of imperfections which might be met with in deduction of his own title." This remark applies with increased force when the defect is found, not in deducing the party's own title, but in the fact of a better title in some other person, not suggested by anything in the deed or evidence of title on which he relies, as in the case before us. Comparatively few persons are familiar with the titles to their lands and fully advised as to the goodness or badness of them, although the evidences of title adverse to them may be regularly registered. It not infrequently happens that persons are wholly unconscious for years of latent defects in the title to their lands, which, when they become known, completely overthrow such titles; and this is none the less true because the evidence of the better title in some form is registered, thus giving constructive notice of it. The statute under consideration is intended to help the party thus suffering prejudice. It would serve such purpose to a very limited extent if the construction insisted upon were adopted. *Reed* v. *Exum,* 84 N. C., 430; *Scott* v. *Battle,* 85 N. C., 184; *Merritt* v. *Scott,* 81 N. C., 385

The inquiry in each particular case is, was the misapprehension and mistake one that might, under the circumstances, be reasonably made? This must depend upon the facts and circumstances of each case presented. Hence, the statute leaves it to the jury, under appropriate instructions from the Court, to determine whether or not "there was reason to believe the title good."

The plaintiff's title to the land in question was not acquired in the ordinary way; how it derived its title, and what land it embraced, was not known to most people along the line of its road—indeed, this case has shown that able and intelligent lawyers have differed widely as to its extent and character. The land—the right of way—was not laid off and ascertained by metes and bounds, nor did the plaintiff have actual possession of or occasion to assert its authority actively over much of it outside of the roadway. The evidence went to prove that the plaintiff's agents saw for months the defendant building the house in question, without suggesting its right to the land. The ordinary citizen knew very little of the plaintiff's charter, or the rights, privileges and advantages it conferred, nor were they interested sufficiently to induce them to examine, much less scrutinize, the mortgage in evidence. The other evidence of the plaintiff, tending to show the nature of defect of title in the defendant, was not by any means conclusive. Accepting the whole evidence as true, the ordinary citizen might honestly, not unreasonably, be ignorant of the plaintiff's title to the land in question, and what land it embraced. The jury might find, as they did, in view of all the facts under the instruction of the Court, that "there was reason to believe the title was good" in the defendant.

The Court instructed them that "the burden was on the defendant to make out his claim by a preponderance of the evidence; that it was not what McCaskill believed, but what there was reason to believe; that McCaskill must not only believe his title good, but that under the statute he must have reason to believe it good, and that the jury must determine this from the evidence." It was not asked to make its instructions more definite. The evidence did not necessarily, and as matter of law, imply that the defendant had reason to believe his title not good; it was, therefore, a question for the jury to determine whether there was or not, and they settled that question in his favor.

There was evidence of an improvement placed on the land by the defendant, permanent in its nature; and whether it was of any value, and if so, what—not exceeding what it cost, and not exceeding what it enhanced the value of the land—were questions for the jury, so made by the statute.

The plaintiff cannot complain of the instructions of the Court to the jury in this respect. Indeed, there was error, if at all, in its favor, because there was no evidence of notice in writing of the title under which the plaintiff claimed, as there must have been, to preclude the defendant from having the value of the whole improvement limited only as above indicated.

The Court expressly told the jury that they should not estimate the value of the improvement "by the actual cost in making the same, but by the enhanced value they gave the premises."

This instruction conforms to the rule prescribed by the statute, recognized and settled in *Wetherell* v. *Gorman.* 74 N. C., 603; *Daniel* v. *Crumpler,* 75 N. C., 184; *Smith* v. *Stewart,* 83 N. C., 406.

The Court might have gone further, and said that in so estimating the value of the improvement they should have in view the nature and location of the land as well as the house, and also the reasonable uses to which the whole might be devoted, but it was not requested to do so, and as the general rule was stated, that the Court did not go further into details, is not error. When the rule of law applicable is stated clearly, this is sufficient—certainly, unless the party complaining asked for more explicit instruction in some particular respect.

It is further contended, that the statutory provision, the benefit of which the defendant seeks, does not apply to and embrace the plaintiff, and therefore it is entitled to have judgment in its favor *non obstante veredicto.* We can see no just or adequate reason why it does not so apply. The

plaintiff is the sole and exclusive owner of the land—a part of its right of way—for the purposes of its charter. The defendant had possession of and color of title to it, having reason, as the jury have found, to believe his title good, and while he so had possession and color of title, he made, as appears, permanent improvements on it of value. Why shall he not have relief—justice—as in other cases? The statute (*The Code,* §479,) provides that the balance ascertained to be due the defendant in cases like this "shall constitute a lien upon the land, recovered by the plaintiff, until the same shall be paid." It is said such lien cannot attach in this case, because the land, being part of the plaintiff's right of way for its road, cannot be sold to discharge the lien. This may, on account of public considerations, be so, but we need not now, and do not decide, that it is or is not, because the statute (*The Code,* §478,) provides that the defendant shall have judgment for such balance of the allowance in his favor, as well as the lien, and such judgment may be enforced by execution against the property of the plaintiff without regard to the lien.

It is said the plaintiff does not want the house in question—that it cannot serve its purposes, and it would rather it were off its land. But any other plaintiff might, on his similar case, say just as much and as truly. The jury have found that the improvement is valuable, just as they do in other like cases—that it enhances the value of the land in question, without regard to the particular convenience, preferences or wants of the plaintiff. The objection in this and like cases, that the permanent improvement does not serve the plaintiff's particular convenience or wants. is not a valid one, if there is an enhancement of the value of the land. The remedy is allowed for the sake of justice, although in some cases, in one way or another, it may work more or less hardship.

It is complained that the allowance was, in any view of

the case, much greater than the enhanced value of the property. With that we have nothing to do—that was a matter for the jury, unless the allowance was manifestly too great, in which case the Judge of the Superior Court might, and ought in such cases, to set the verdict aside. But this high discretion is his, not ours, and not reviewable by us.

The judgment must be affirmed.

Affirmed.