STATE v. FRANK FOSTER.

(Filed 6 December, 1916.)

1. Jurors—Expressed Opinion—Findings—Impartiality—Appeal and Error.

A juror who states that he has formed and expressed an opinion adverse to the defendant on trial for a homicide, but that he could hear the case and render a verdict according to the evidence and the law, is not held on appeal to be disqualified to serve, when the trial judge has ruled that he was fair and impartial.

2. Appeal and Error—Exceptions—Assignments of Error.

An assignment of error not based upon exception will not be considered on appeal.

### 3. Appeal and Error—Evidence—Competent in Part—Exceptions.

Exception taken to evidence generally, some of which is competent, will not be held for reversible error on appeal, for exception should be taken specifically to the part that is not competent.

### 4. Homicide—Common Design—Evidence.

Where there is sufficient evidence that two defendants were acting together with common design to commit a homicide, the declarations or conduct of one of the parties in furtherance of their purpose is competent against the other.

### 5. Instructions—Trials—Evidence—Statements of Counsel.

Upon this trial for a homicide, a charge of the court is held· without error which instructed the jury to find the facts upon the evidence, and not from what the counsel and the court said.

### 6. Homicide—Murder—Evidence—Restricted Inquiry.

Where there is no evidence of manslaughter, upon a trial for a homicide, it is proper for the trial judge to restrict the inquiry to murder in the first or second degree, when there is evidence thereof.

### 7. Homicide—Burden of Proof—Matters in Excuse.

Upon a trial for a homicide the burden is on the State to show beyond a reasonable doubt that the killing was done with premeditation and deliberation, to convict of murder; and for the defendant to show matters in justification, mitigation, or excuse which would reduce the degree of the crime.

### 8. Homicide—Murder—Instructions—Appeal and Error—Harmless Error.

Where upon a trial for a homicide the trial judge has sufficiently defined the words "premeditation and deliberation" necessary for a conviction of murder in the first degree, the mere use of the words disjunctively, in a single instance, will not be held as reversible error.

### 9. Appeal and Error—Instructions—Contentions—Objections and Exceptions.

Objection to an alleged prejudicial misstatement of the contention of a party by the judge in his instructions to the jury must be taken at the time, and exception thereafter taken comes too late, and will not be considered on appeal.

### 10. Homicide—Instructions—Intoxication—Evidence—Appeal and Error.

While the state of intoxication which will prevent deliberation and premeditation on the part of one accused of a homicide, and reduce the crime from murder in the first degree, does not depend upon whether the intoxication was voluntary on his part, it will not be held prejudicial error for the trial judge to have so charged the jury, when it appears that there was no sufficient evidence that the accused at the time of the homicide was too intoxicated to premeditate or deliberate upon the crime, but that it was preconceived and committed by him with a fixed purpose to perpetuate it.

61—172

**11. Instructions — Homicide — Murder — Intoxication — Appeal and Error — Harmless Error.**

Where the charge of a judge, upon a trial for a homicide, taken as a whole, correctly states the law as to the prisoner's state of intoxication which would reduce the crime from murder in the first degree, an accidental slip of the judge in the use of the words "involuntary drunkenness" in connection therewith will not be held as reversible error.

INDICTMENT for murder, tried before *Lane, J.,* and a jury, at April Term, 1916, of POLK.

The prisoner and Ed. Bridgeman were indicted for the murder of John Hayes on 25 December, 1915. The jury convicted the prisoner of murder in the first degree and he has appealed from the judgment upon the verdict. Ed. Bridgeman was convicted of murder in the second degree, but the verdict was set aside by the court.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Spainhour & Mull, A. Y. Arledge for defendant.*

WALKER, J. There are many exceptions in the record, but when they are classified and each assigned to its proper group, there are really very few. We will consider the assignments of error in their numerical order.

First. The challenge to a juror because he had formed and expressed an opinion was fully met by the ruling of the court, upon evidence, that he was fair and impartial. He stated that, notwithstanding the opinion he had formed, he could hear the case and render a verdict according to the law and the evidence. The exception, therefore, falls within the principle as stated in *S. v. Banner,* 149 N. C., 519, and is overruled. See, also, *S. v. DeGraff,* 113 N. C., 688; *S. v. Green,* 95 N. C., 611; *S. v. Kilgore,* 93 N. C., 533. It does not clearly appear that the challenges of the prisoners had been exhausted. Gregory's Supplement, sec. 3263; *S. v. Banner, supra.*

Second. This assignment is not based upon any exception, and cannot, therefore, be considered. *Worley v. Logging Co.,* 157 N. C., 490; *McLeod v. Gooch,* 162 N. C., 122; *S. v. Freeze,* 170 N. C., 710. It does not appear, though, that this prisoner excepted individually to the evidence of Mrs. Hulda Haynes, nor do we see that it was prejudicial to him. Besides, there was no serious denial, and could not be, that this prisoner committed the homicide, whether excusably or not. The exception, if it may be regarded as properly taken in apt time, extended to a mass of evidence, some of which was competent upon certain phases of the case. It should have specified the objectionable testimony. *R. R. v. Mfg. Co.,* 169 N. C., 156; *S. v. English,* 164 N. C., 508; *Wilson v. Lumber Co.,* 131 N. C., 163; *S. v. Ledford,* 133 N. C., 714.

Third. The evidence covered by this and the next six exceptions, which will include the ninth, was competent in part, and each of the exceptions is, therefore, amenable to the rule we have just stated when passing upon the second exception. The evidence was either competent as to both prisoners or as to Ed. Bridgeman, and the exceptions are made jointly. But upon a review of all the evidence embraced by these exceptions we do not see that it was prejudicial to the prisoner. It may also be said that there was sufficient evidence to show that the prisoner and Ed. Bridgeman were acting together or in concert, and when there is such concert of action, or common design, the declarations or conduct of one of the parties in furtherance of their purpose is competent against the other conspirator. *S. v. Anderson,* 92 N. C., 733; *S. v. Turner,* 119 N. C., 841, 848. It was held in *S. v. Anderson, supra,* as appears by the headnotes: "While it is a general rule of evidence that the acts and declarations of a person in the absence of the prisoner are not admissible in evidence against him, yet there are exceptions, one of which is in case · of a conspiracy to do an unlawful act, when the acts and declarations of conspirators, in furtherance of the common purpose, are competent, although made in the absence of the others. The least degree of consent or collusion between parties to an illegal transaction makes the act of one the act of the others." A large part of the testimony, and the material part, related to what was done at the time and place of the homicide, and was competent as *pars rei gestæ.*

Fourth. This and the next two exceptions relate to the testimony of Florence Thomason, Mule Russell, and Horace Johnson, as to the conduct of Ed. Bridgeman and the prisoner. These exceptions are all open to the same criticism as the second of the exceptions. Some of the evidence to which objection was made was competent, and the objectionable part is not specifically stated. But we think the evidence is generally relevant to show the condition of the prisoners, their temper and disposition towards the parties they overtook when the homicide was committed, and their object in going to the place. While not very strong, we cannot say it was not some evidence for the purpose of disclosing those facts. It, at least, did no harm to this prisoner.

Fifth. The thirteenth and fourteenth exceptions are clearly untenable. It was manifestly proper for the court to tell the jury that they must find the facts from the evidence and not from what counsel or the court had said.

Sixth. The next three exceptions cannot be sustained. There was no evidence of manslaughter, and the judge correctly restricted the inquiry to murder in the first or second degree or acquittal. There was no sudden heat of blood or legal provocation. The court's definition of the different degrees of homicide was correct.

Seventh. That the burden is upon the prisoner to satisfy the jury by

proof of any matters of justification, excuse, or mitigation has been too long settled to be now questioned. The jury were instructed that the burden was upon the State to establish beyond a reasonable doubt that the prisoner killed the deceased with premeditation and deliberation. The charge was correct and in accordance with the authorities. *S. v. Brittain,* 89 N. C., 481; *S. v. Simonds,* 154 N. C., 197; *S. v. Rowe,* 155 N. C., 436; *S. v. Yates,* 155 N. C., 450; *S. v. Vann,* 162 N. C., 534; *S. v. Cameron,* 166 N. C., 379. This disposes of the nineteenth assignment of error.

Eighth. The court sufficiently defined the meaning of the words "premeditation and deliberation," and the jury could not have been misled as to what was necessary to be found by them in order to convict of murder in the first degree, and the mere use of the words disjunctively in a single instance was inadvertent and did not prejudice the prisoner, as, in other parts of the charge, the law · was stated so clearly and repeatedly that the jury could not have misunderstood it. A similar expression was used in *S. v. Logan,* 161 N. C., 235, and held not to be reversible error, as it was sufficiently overcome by the charge, if read as a whole.

Ninth. There were several exceptions taken to the statement by the court of the contentions in the case, but if they were not properly stated, objection should have been made at the time, so that the necessary correction could be made. *S. v. Cox,* 153 N. C., 638; *Jeffress v. R. R.,* 158 N. C., 215; *S. v. Blackwell,* 162 N. C., 672; *S. v. Cameron,* 166 N. C., 379. It will not do to take the chance of a favorable verdict and except afterwards if it is adverse. The objection then comes too late. Parties must be watchful and diligent if they would preserve their rights, and this means that every objection must be made in apt time and in the proper way. *S. v. Tyson,* 133 N. C., 692. We said in that case at p. 699: "A party will not be permitted to treat with indifference anything said or done during the trial that may injuriously affect his interests, thus taking the chance of a favorable verdict, and afterwards, when he has lost, assert for the first time that he has been prejudiced by what occurred. · His silence will be taken as a tacit admission that at the time he thought he was suffering no harm, but was perhaps gaining an advantage, and consequently it will be regarded as a waiver of his right afterwards to object. Having been silent when he should have spoken, we will not permit him to speak when by every consideration of fairness he should be silent. We will not give him two chances. The law helps those who are vigilant, not those who sleep upon their rights. He who would save his rights must be prompt in asserting them."

Tenth. This brings us to the consideration of what is the main exception of the prisoner. He complains by one or two exceptions that in

one instance the learned judge used the expression "involuntary drunkenness" when instructing the jury with respect to the effect of drunkenness upon the prisoner's guilt or upon his capacity for premeditation and deliberation. It makes no difference, it is true, as to whether the drunkenness is voluntary or involuntary, and the expression "involuntary drunkenness," considered by itself, or abstractly, might be error, but it was clearly harmless here. We considered, somewhat at large, the question as to the effect of intoxication upon criminal guilt in *S. v. English,* 164 N. C., 497. Drunkenness is no excuse for crime, as has often been said; but where a specific intent is essential to the criminality of the act, or there must be premeditation or deliberation, or some mental process of the kind in order to determine the degree of the crime, it is proper to consider the prisoner's mental condition at the time the alleged offense was committed. If he was not able for any reason to think out beforehand what he intended to do, and to weigh it and understand the nature and consequences of his act, he should not be held to the same measure of responsibility as one with better faculties and a clearer mind should be. Wharton says, in his work on Homicide (3 Ed.), p. 811: "Intoxication, though voluntary, is to be considered by the jury in a prosecution for murder in the first degree, in which a premeditated design to cause death is essential, with reference to its effect upon the ability of the accused at the time to form and entertain such a design, not because, *per se,* it either excuses or mitigates the crime, but because, in connection with other facts, an absence of malice or premeditation may appear. Drunkenness as evidence of want of premeditation or deliberation is not within the rule which excludes it as an excuse for crime. And a person who commits a crime when so drunk as to be incapable of forming a deliberate and premeditated design to kill is not guilty of murder in the first degree. The influence of intoxication upon the question of the existence of premeditation, however, depends upon its degree, and its effect on the mind and passions. No inference of the absence of deliberation and premeditation arises from intoxication as a matter of law; and intoxication cannot serve as an excuse for the offender; and it should be received with great caution, even for the purpose of reducing the crime to a lower degree." This principle was approved in *S. v. English, supra,* and *S. v. Shelton,* 164 N. C., 513, and in the last cited case it was said, at p. 517, quoting from *S. v. Murphy,* 157 N. C., 614: "Where a specific intent is essential to constitute crime, the fact of intoxication may negative its existence. Accordingly, since the statute dividing the crime of murder into two degrees, and in cases where it becomes necessary, in order to convict an offender of murder in the first degree, to establish that the killing was deliberate and premeditated, these terms contain, as an essential element of the crime of murder, a purpose to kill previously formed after weighing the matter (*S. v.*

*Banks,* 143 N. C., 658; *S. v. Dowden,* 118 N. C., 1148), a mental process embodying a specific definite intent; and if it is shown that an offender charged with such crime is so drunk that he is utterly unable to form or entertain this essential purpose, he should not be convicted of the higher offense. It is said in some of the cases, and the statement has our unqualified approval, that the doctrine in question should be applied with great caution. It does not exist in reference to murder in the second degree nor as to manslaughter. It has been excluded in well considered decisions where the facts show that the purpose to kill was deliberately formed when sober, though it was executed when drunk, a position presented in *S. v. Kale,* 124 N. C., 816, and approved and recognezed in *Arzman v. Indiana,* 123 Ind., 345, and it does not avail from the fact that an offender is, at the time, under the influence of intoxicants, unless, as hereinbefore stated, his mind is so affected that he is unable to form or entertain the specified purpose referred to." This case in some of its features is much like *S. v. English, supra,* and *S. v. Shelton, supra.* In the *Shelton* case the Court thus stated the rule: "All the authorities agree that to make such defense available the evidence must show that at the time of the killing the prisoner's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. As the doctrine is one that is dangerous in its application, it is allowed only in very clear cases; and where the evidence shows that the purpose to kill was deliberately and premeditatedly formed when sober, the imbibing of intoxicants to whatever extent in order to carry out the design will not avail as a defense." Keeping these principles in mind, and testing this case by them, we do not think there was sufficient evidence of intoxication to make them applicable, and if the language of the judge was erroneous in itself, it does not invalidate the trial, as it was immaterial and harmless. It was Christmas day and the prisoner may have been drinking, but he introduced no testimony, and that of the State tends to show that he was sober, and so does his conduct immediately preceding the fatal shot. There is evidence from which it may be inferred that he and his companion, Ed. Bridgeman, were not in a very good frame of mind, but were seeking trouble. Their actions and conduct before and at the time of the homicide would indicate that they were not friendly toward the deceased, perhaps on account of some jealousy aroused by the preference which one of the women, Florence Thomason, had shown for him. If the prisoner was drunk, he did not act like he was, nor did he make the impression on the bystanders that he was intoxicated, but, on the contrary, he had come to the spot with his gun and evidently bent upon mischief, and he seemed to do the intended deed with steadiness of purpose, if not with pitiless coolness and deliber-

ation, and apparently without the slightest regard for consequences. He had sense enough not to take the chance of killing any of the others standing near by, as he gave this order to his intended victim, who was brave enough, to defend himself, but utterly helpless and unable to do so: "Fall out of the crowd, John, and God damn you, I will kill you." He then fired his gun with the fatal result. The prisoner did not display the unnatural manner or temper of a man inflamed by liquor, but the calm and determined purpose of one who had normal possession of his mental faculties and knew full well what he was about to do. Furthermore, he had tried before to kill John Hayes, and was prevented from doing so, at the time, by Ed. Bridgeman. This was evidence of his design or definite purpose to kill formed beforehand, and the circumstances immediately attending the act of firing the gun tended to show the deliberation, and supplied, therefore, the other element of murder in the first degree. The jury took this view of the case, under a charge free from error and supported by evidence. But if it were otherwise, we do not think the mere accidental slip of the judge could have misguided the jury in view of the very clear and explicit statement of the law in other parts of the charge. Looking at the instructions as a whole, and we are required so to do, the jury must have understood that it was, after all, the state of the prisoner's mind as a result of intoxication, and not how the latter was caused, which determined the degree of homicide. There may be palliating circumstances in this case not disclosed by the record, but there is nothing which, in law, reduces the homicide from the degree for which the jury rendered their verdict.

No error.