PLAINTIFF'S APPEAL.
The court charged that the term "permanent improvements" includes "all improvements of a permanent nature, and which substantially enhanced the value of the property in controversy." The court charged further (the property being a farm) that "putting up dwelling-house or tenant houses, barns and stables, and other out-buildings, and any substantial improvements which might be made to those buildings, the necessary ditching and necessary or proper fencing, the digging of a well or planting of orchards, and cutting the timber in the course of clearing for cultivation, the grubbing of stumps, bushes and reed patches necessary to clear and break the land for planting and cultivation were permanent improvements on such property within the meaning of the statute," adding, however, "that it was for the jury to determine whether or not such improvements, if the jury should find that any were made, enhanced the value of the property, and if so how much, and while the jury should consider substantial additions or improvements to the buildings if made, they should not consider repairs to such buildings which should be made by the owner in the ordinary use of such property." He further charged that ditching (embraced in the plaintiff's first exception), wire fencing (second exception), lightning rods (third exception), dwelling-house, tenant houses, barns and stables, the digging of a well, and the planting of orchards, and the like were permanent improvements only if they substantially enhanced the value of the property. In these instructions we find no error.
The plaintiff's fourth and fifth exceptions were to the refusal of prayers to instruct the jury, which were based upon the idea that since under the terms of the trust established in the main causes, 175 N.C. 319, the plaintiff was decreed to be the owner of the life estate, he occupied the position of a life tenant with respect to the improvements made by him. But he was not an ordinary life tenant within the meaning of the principle that life tenants cannot recover for betterments which were placed thereon with the knowledge of that fact. The defendant made the improvements, as the jury find, under a bona fide belief that he was the owner in fee simple, and the court decided that the plaintiff was entitled to have the issue thereon submitted, 176 N.C. 108, by a unanimous Court, and this was reaffirmed on rehearing, 178 N.C. 444. The plaintiff's prayers were therefore properly refused.
Exceptions 6 and 7 to the refusal of prayers cannot be sustained. The defendant's right to recover for betterments does not depend upon the *Page 48 
wish of plaintiff for them or the sufficiency of the buildings already upon the land, R. R. v. McCaskill, 98 N.C. 526. The sole question, the defendant having placed these improvements upon the land under a bona fide
belief that he owned the premises in fee simple, is whether or not the things which were put thereon as permanent improvements "substantially enhanced the value of the premises." If so, the defendant was entitled to recover to the extent of such enhancement in value of the property caused thereby, not exceeding the cost. In the plaintiff's appeal there is
No error.
DEFENDANT'S APPEAL
The exceptions on the defendant's appeal present but a single question, and that is, whether the evidence therein offered tending to show a large outlay, and labor in preparing the soil to put it in condition for cultivation, and improving the fertility permanently by the use of a judicious system of tillage and high-grade fertilization over and above the ordinary fertilization of the property from year to year, should be submitted to the jury.
The defendant offered to show as follows: "That the defendant had also adopted and used a system of tillage with an idea of improving permanently the character of the soil and increasing its fertility, and that he had judiciously applied this system to the cultivation of this land; that he had burned and placed upon the land 8,000 bushels of oyster shells, burned into lime; that he had placed twenty loads of manure upon the lands the first year, besides that which came from the place; that he had placed upon these reclaimed acres 200 loads of manure a year in addition to the ordinary accumulation on the farm; that he had purchased and placed on it in addition to this an entire barge load of manure; that he had also placed upon the land 1,000 bushels of hard-wood ashes each year, for nine years, same having been taken from his mill, which was located in the neighborhood; that he had sowed the land with peas and clover and plowed them in for the purpose of increasing its fertility; that he had in his system of tillage adopted a judicious system in the rotation of crops and deep plowing peculiarly adapted to this soil, for the purpose of increasing its fertility; that in addition to the 8,000 bushels of oyster shells burned into lime, the defendant had placed on the land two carloads of agricultural lime of about 100 tons; that this was all in addition to the fertilizers used each year for the tillage of the crops, and for which no claim is made; that in following this line of effort to improve the soil the defendant had made a cash outlay in excess of $4,230.18, and that in his opinion such efforts had enhanced the value of the property to this amount."
Whether the above were applied, and whether they substantially enhanced the value of the farm, was fit for the jury to consider, and we think it was error to exclude the testimony offered. *Page 49 
This evidence tends to show an unusual and successful effort by which a run-down farm of about 143 acres, which had lain idle for almost a generation, had been brought into a high state of cultivation, and made, as the defendant contends upon the evidence, to "blossom like a rose." The mere cultivation of the soil in the ordinary use of the land and fertilization thereof for the purpose of raising crops in the ordinary course of tillage certainly would not constitute betterments. Only those things which substantially enhance the value of the premises permanently should be estimated by the jury and allowed to the defendant as compensation.
The statute does not permit a recovery except for improvements that are permanent and valuable. The word "permanent" is defined in the Century Dictionary as "lasting, or intended to last indefinitely," "fixed or enduring," "abiding," and the like, and it was held in Simpson v. Robinson,37 Ark. 132, that an improvement does not mean a general enhancement in value from the occupant's operations.
It is elemental justice, as well as public policy, when a man occupies premises, "having reason to believe," C. S., 701, that he is owner thereof in fee simple, that to whatever extent he has increased the value of the property by permanent improvements thereon he should receive compensation from the party who recovers the premises.
The cultivation of the soil in a good and proper manner, and the keeping of the buildings in repair and the land in good condition does not entitle the defendant to recover compensation, but permanent improvements by clearing the land, ditching, fencing, and likewise high fertilization of permanent effect (over and above the ordinary fertilization for the purpose of making the crops), causing enhancement in the value of the farm — all these things are properly for the consideration of the jury, who should find what is a fair allowance for the permanent enhancement in value of the property thereby at the time of the recovery of the premises by the plaintiff.
But it is a matter of fact for the jury, rather than one of law, to estimate upon the evidence whether any of these things have added permanent enhanced value to the realty. If a building is placed upon the premises it will gradually decay; if ditches, fencing, or other betterments are made they will gradually deteriorate, if not kept up. "Permanent" improvements mean such betterments as will add to the intrinsic value of the property at the time it was recovered by the plaintiff whether there has been, in this case, unusually high fertilization of the land, or the addition to the soil of vegetable or mineral matter whereby the property has been permanently enhanced in value, when there is evidence offered to that effect, is for the jury to determine in estimating the benefit which the plaintiff derived therefrom. In the course of time, by *Page 50 
negligence, the buildings may deteriorate, and the enhanced production of the land may grow less, but the jury is to estimate what is the permanent added value to the premises at the time the plaintiff recovered the property. The difficulty is not in the principles of law applicable but as to matters of fact arising upon the evidence and which were for the jury to weigh and determine and which can never be exactly the same in any two cases. If unsuitable buildings are put upon the premises, no matter what the cost, the jury can find that it was no enhancement to the property thereby, so if the ditching and fencing were unnecessary or injudiciously made, the jury would consider the same. But it is not essential that they be useful to the plaintiff, R. R. v. McCaskill, 98 N.C. 526.
The sole matter for consideration is embraced in one proposition, and that is, "How much was the value of the property permanently enhanced, estimated as of the time of the recovery of the same, by the betterments put thereon by the labor and expenditure of the bona fide holder of the same?"
The matter is fully discussed and clearly set out in Gibson v. Fields
(79 Kansas, 38), 17 Anno. Cas., 406, in the elaborate notes thereto appended.
Certain acts which amidst certain surroundings and conditions might enhance the property permanently, in other surroundings and conditions would add nothing to its permanent value. These are ordinarily matters for the jury, and no general rule can be laid down more definite than that above stated. In the defendant's appeal there was
Error.
STACY, J., concurring.