STATE v. NOAH CURETON.

(Filed 20 November, 1940.)

**1. Homicide § 30—**

A general motion to nonsuit does not properly present on appeal defendant's contention that the evidence is insufficient on the charge of first degree murder, but defendant having been convicted of the capital felony, the contention is nevertheless considered.

**2. Homicide § 25—Evidence of defendant's guilt of murder in the first degree held sufficient to be submitted to the jury.**

Evidence tending to show that about an hour after a dispute between defendant and deceased, arising out of a gambling game, the parties met at another place to continue the game, that when defendant arrived the deceased walked away, that defendant broke away from a witness who was holding him, caught up with deceased, slapped him down, shot him, and while deceased was pleading for his life, turned him around and shot him in the back of the head, inflicting fatal injury, that defendant then returned to his home, came back out, walked up to where deceased was lying in the street and struck him and then ordered the crowd to disperse, *is held* amply sufficient to be submitted to the jury on the charge of first degree murder.

**3. Criminal Law § 53e—**

Where the State has a number of witnesses and only defendant testifies for the defense, the fact that the court necessarily consumes more time in outlining the evidence for the State than that of defendant does not support defendant's contention that the court expressed an opinion upon the facts by laying undue emphasis on the contentions of the State.

**4. Criminal Law § 78e—**

An exception to the charge on the ground that it failed to state in a plain and concise manner the evidence in the case and declare and explain the law arising thereon, is a broadside exception and does not properly present for review any contention of error in the charge.

**5. Criminal Law § 5a—**

Every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes until the contrary is proven to the satisfaction of the jury.

**6. Homicide § 10—**

Defendant's contention that he was too intoxicated to be capable of premeditation and deliberation is an affirmative defense akin to the plea of insanity, and the burden is upon defendant to prove intoxication to such a degree as to render him unable to think out and plan beforehand what he intends to do.

**7. Same: Criminal Law § 5b—**

Although intoxication is an affirmative defense, no special plea is required.

**8. Homicide §§ 10, 27h—In the absence of evidence of intoxication to degree precluding premeditation and deliberation, court is not required to charge jury upon defense.**

The evidence tended to show that defendant had been drinking, and defendant himself testified that he was "pretty full," and that he and deceased had been drinking together. There was no evidence that defendant's mental processes were deranged by intoxication, but, on the contrary, defendant's own evidence was to the effect that he knew all about the fatal encounter and had attempted to reason and restrain the deceased, whom defendant contended was disorderly. *Held:* There was no evidence

of intoxication to a degree precluding premeditation and deliberation so as to constitute the defense a part of the law of the case, and the failure of the court to instruct the jury thereon was not error, certainly in the absence of a prayer for special instructions.

**9. Homicide § 30—**

Where, upon the trial, defendant does not rely upon the defense of intoxication precluding premeditation and deliberation, he may not assert such defense for the first time upon appeal.

APPEAL by defendant from *Clement, J.,* at July Term, 1940, of MECKLENBURG. No error.

Criminal prosecution upon bill of indictment charging the defendant with the murder of one John William Henniken, *alias* John Williams.

The jury returned a verdict of guilty of murder in the first degree. From judgment of death by asphyxiation pronounced thereon the defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*B. S. Whiting for defendant, appellant.*

BARNHILL, J. The defendant assigns as error the refusal of the court to dismiss, on his motion of nonsuit, the first degree murder charge. The record does not sustain this assignment. Only a general motion of nonsuit was entered. However, as this is a capital case we have considered defendant's assignment as if supported by the record.

Briefly stated, the evidence favorable to the State tends to show that on 23 June, 1940, the defendant, the deceased and others, had been engaged in a game of skin. The deceased took a card out of the deck which, as we understand, is a serious breach of the ethics of that game. The defendant objected. In a few minutes the defendant left and went home. In a short while he came back and the deceased apologized. The game broke up and in about an hour the parties again gathered at another place to continue the game. When the defendant came up to the place of the second game he stated, "I have been mistreated." At that time he had a gun that he shot twice on the street. The deceased walked away and a witness tried to hold the defendant. When the deceased was about 125 feet away the defendant broke away from the witness, followed the deceased, caught up with him and slapped him down. He then pulled him up and said to him, "You done me wrong" and shot him. Deceased said, "Oh, Lordy Noah, you done shot me, what you shoot me for? Don't shoot me no more. I ain't done nothing to you." To this the defendant replied, "You done me wrong." He then turned the deceased around and shot him through the head, re-

turned to the shoe shine stand and said, "Who don't like it cause he' lay up there?" He then returned to his home, came back out, walked up to the deceased as he lay in the street and struck the deceased, after which he threw up his hands and said to the others, "Bottle up and go, everybody got to bottle up and go." This evidence is amply sufficient to be submitted to a jury on the charge of murder in the first degree.

Defendant's second assignment of error is directed to the alleged failure of the court to comply with the provisions of C. S., 564, in that: (1) In giving the charge the court laid undue emphasis on the contentions of the State, thereby expressing an opinion that facts favorable to the State were fully and sufficiently proven, and (2) that in giving his charge the court failed to state in a plain and correct manner the evidence in the case and declare and explain the law arising thereon.

*First:* The court reviewed in detail the evidence of the several witnesses for the State and that of the defendant in his own behalf. It then outlined, in behalf of the State and of the defendant, the pertinent contentions arising thereon. As there were a number of witnesses for the State and only the defendant testified in his behalf the court naturally consumed more time in outlining the evidence for the State than it gave to the evidence of the defendant. But, we find nothing in the charge to support the contention that the court acted otherwise than in a fair and impartial manner, giving the defendant the consideration to which he was entitled.

*Second:* This feature of defendant's assignment of error is a broadside exception and for that reason might well be ignored. But the defendant in his brief undertakes to point out wherein the charge is defective in this respect. He contends that the court failed to explain and apply the principle of law that when one commits a murder when so drunk as to be incapable of forming a deliberate and premeditated design to kill, he would not be guilty of murder in the first degree, but only of murder in the second degree or a lesser degree of homicide.

Every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes until the contrary is proven to the satisfaction of the jury. *S. v. Bracy,* 215 N. C., 248, 1 S. E. (2d), 891. No inference of the absence of deliberation and premeditation arises as a matter of law from intoxication; and mere intoxication cannot serve as an excuse for the offender. The influence of intoxication upon the question of existence of premeditation depends upon its degree and its effect upon the mind and passion. For it to constitute a defense it must appear that defendant was not able, by reason of drunkenness, to think out beforehand what he intended to do and to weigh it and understand the nature and consequence of his act.

"All the authorities agree that to make such defense available the evidence must show that at the time of the killing the prisoner's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. As the doctrine is one that is dangerous in its application, it is allowed only in very clear cases." *S. v. Shelton,* 164 N. C., 513, 79 S. E., 883; *S. v. Murphy,* 157 N. C., 614, 72 S. E., 1075; *S. v. English,* 164 N. C., 497, 80 S. E., 72; *S. v. Foster,* 172 N. C., 960, 90 S. E., 785; *S. v. Ross,* 193 N. C., 25, 136 S. E., 193; *S. v. McManus,* 217 N. C., 445; *S. v. Alston,* 210 N. C., 258, 186 S. E., 354.

The defendant in relying on this defense contends that for the time being his reason was overthrown and his mental processes anesthetized. Thus, intoxication is an affirmative defense akin to the plea of insanity and, as every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crime until the contrary is proven, the burden of this defense is upon the defendant. *S. v. Payne,* 86 N. C., 609; *S. v. Brittain,* 89 N. C., 481; *S. v. Terry,* 173 N. C., 761, 92 S. E., 154, and cases there cited; *S. v. Jones,* 191 N. C., 753, 133 S. E., 81.

While intoxication is an affirmative defense no special plea is required. However, to avail the defendant and require the court to explain and apply the law in respect thereto, there must be some evidence tending to show that the defendant's mental processes were so overcome by the excessive use of liquor or other intoxicants that he had temporarily, at least, lost the capacity to think and plan. As to this, he is not relegated to his own testimony. It is sufficient if the testimony of any witness tends to establish the fact. But it must be made to appear affirmatively in some manner that this defense is relied upon to rebut the presumption of sanity before the doctrine becomes a part of the law of the case which the judge must explain and apply to the evidence.

This is the rule this Court has consistently followed. *S. v. Foster, supra; S. v. English, supra; S. v. Murphy, supra; S. v. Shelton, supra; S. v. Kale,* 124 N. C., 816; *S. v. Hammonds,* 216 N. C., 67; *S. v. Bracy, supra; S. v. McManus, supra.* Thus it was in the *Ross case, supra,* that a new trial was granted because the defendant tendered evidence tending to show that at the time of the homicide he had been drinking "quite a bit" and that when he was under the influence of ardent spirits "He lost his memory entirely," which was excluded by the court.

Keeping these principles in mind and testing this case by them, we do not think there was sufficient evidence of intoxication to make them applicable. Certainly, in the absence of a prayer, the evidence is not such as would require the court to charge the jury under these principles of law. Nor was it error for it to fail so to do. It is true that

witnesses for the State testified that the defendant had been drinking some and that at the time he was endeavoring to follow the deceased he told the witness who was holding him to turn him aloose he was drunk, and that the defendant testified, "I was pretty full," and that he and the deceased had been drinking together. But, the record is devoid of any suggestion that defendant's mental processes were deranged. On the contrary, he affirmatively asserts that the deceased was the one who was disorderly; that he had the capacity to and did reason with him in an effort to prevail upon him to desist in his disorderliness and go home; that he undertook to take the pistol away from the deceased (who he says had it); and in so doing it was accidentally discharged, causing the death of the deceased. Likewise, it appears that prior to the trial he made two contradictory statements concerning the occurrence, on each occasion claiming to know all about what took place. It is apparent, therefore, that this defense was not relied upon in the court below. It may not be asserted for the first time here.

In the trial below we find

No error.