STATE OF NORTH CAROLINA v. IRVIN KENNETH SCALES

No. 7521SC787

(Filed 18 February 1976)

1. Criminal Law §§ 6, 119— defendant under influence of drugs — requested instruction

In a prosecution for breaking and entering and larceny where the evidence tended to show that defendant broke into his neighbor's apartment and took therefrom stereo speakers and a receiver and a portable television, the trial court did not err in refusing to give requested jury instructions to the effect that "if, as a result of a drugged condition, the defendant did not have the required specific intent," or "did not have the physical capability or motor skills to engage in" the alleged crime, the jury should find him not guilty, since being under the influence of intoxicants or drugs is an affirmative defense, and to require the court to explain and apply the law with respect thereto, there must be threshold evidence tending to show that defendant's mental processes were so overcome that he had, at least temporarily, lost the capacity to think and plan, but there was no such evidence in this case.

2. Criminal Law § 139— committed youthful offender — no minimum term of imprisonment

The trial court properly entered judgment imposing prison sentence upon defendant as a committed youthful offender for a maximum term of four years without a set minimum term. G.S. 148-49.4.

APPEAL by defendant from *Albright, Judge.* Judgment entered 20 May 1975 in Superior Court, FORSYTH County. Heard in the Court of Appeals 22 January 1976.

By indictment proper in form, defendant was charged with (1) breaking and entering a dwelling apartment occupied by Gregory Squires, (2) larceny pursuant to the breaking and entering, and (3) receiving stolen property. He pled not guilty.

Evidence presented by the State is summarized in pertinent part as follows:

On the morning of 22 October 1974, Squires left his apartment on Fifth Street in Winston-Salem around 9:00 a.m. Shortly after 1:30 p.m., he returned home to find his apartment ransacked. The front windows, which had been locked shut when he left for work, were standing open. The storm door at the rear of the apartment had been broken, leaving shattered glass strewn across the floor. Drops of blood were found near the storm door and on the doorsill.

Squires called the Winston-Salem Police Department, reported the break-in, and Officer Gary L. Rose was dispatched to the scene. An inventory of the items missing revealed the theft of two stereo speakers, a stereo receiver, a portable television, two shirts and a towel, with an estimated value of around $400.00. Squires had given no one permission to enter the apartment or to remove any of the missing items.

On the balcony at the rear of the apartment, Officer Rose found broken glass from the smashed storm door. Mingled with the glass were blood spots leading out the door and onto the balcony. A stereo cord trailed across a wrought iron railing onto the common balcony joining the rear of Squires' apartment with the apartment next door where defendant lived with his mother. Over the defendant's balcony, Officer Rose recovered a gray turtleneck sweater freshly stained with blood. Both the sweater and the stereo cord were identified by Squires as two of the items missing from his apartment.

After Officer Rose left, Squires went across the street to see if a friend, who had been at home all day, had noticed anything going on over at his apartment. While at his friend's apartment, Squires observed defendant on the long balcony in the front of the building. Defendant stopped in front of Squires' apartment, tried the door, and then moved away. As Squires returned home, he saw defendant again, this time sitting on the railing of the front balcony with a fresh bandage on his forearm. Remembering the blood spots around the broken window, Squires again called police.

Officer Gurney Myers arrived on the scene around 7:30 p.m. Squires recounted the details of the burglary and how he had seen defendant, with a fresh bandage, moving suspiciously near the door of his apartment. Armed with this information,

Officer Myers went next door to defendant's mother's apartment where he was met at the door by defendant's mother, Mrs. Ruth Scales. She admitted the officer and began telling him about her son's drug problem. Mrs. Scales explained that at the time defendant was "high" on something and had just returned from the hospital for treatment of a cut on his arm.

She told Officer Myers she wanted to show him a tablet like the one she thought her son had taken. He accompanied Mrs. Scales to the rear of the apartment to see the tablet and to talk with defendant. As they passed one of the bedrooms, which was determined to be defendant's, the officer observed in plain view two stereo speakers meeting the description of those taken from the Squires' apartment. When they reached Mrs. Scales' bedroom, she produced a tablet like the one she thought defendant had taken. At this point, defendant came into the room and fell on the bed.

The officer told her about the break-in at Squires' apartment and what had been taken. Mrs. Scales then exclaimed, "The items are in my son's bedroom." Officer Myers entered defendant's bedroom and observed several portable television sets, and various items taken from Squires' apartment. Defendant was then placed under arrest and taken to police headquarters.

Defendant took the stand and presented other evidence, summarized as follows:

On the morning of 22 October 1974 he took a barbiturate tablet of unknown dosage prior to leaving for school. He recounted the progressive effect of the pill on him during his morning classes. He became sleepy and his speech became slurred. During his third period biology class his teacher reported defendant's behavior to school officials. Defendant was called out of class and questioned by school officials, who determined that he should be taken home. Assistant Principal Henry Jones took defendant home around 10:00 a.m. Jones testified that although defendant moved slowly, his speech was slurred and he had some difficulty in getting his key into the lock and opening the door of his apartment, he was still able to move about under his own power and appeared to know what was happening to him and what he was doing.

After Jones left, defendant prepared a can of spaghetti for his lunch around 11:30 a.m. He opened the can with a manual

can opener and heated the spaghetti in a pan. In the process of preparing the meal he reached across a dishrack, cutting his arm on the exposed edge of a kitchen knife. After he finished eating, defendant lay down on the floor in the kitchen and went to sleep.

Later he was interrupted by a knock at the front door of the apartment. He stumbled to his feet, and went to the door. Two men, unknown to him except on sight, wanted to use defendant's room to store some merchandise. He let them in and showed them which room was his. They put some things in the room and left. Defendant then returned to the kitchen and went back to sleep.

Defendant slept until around 1:30 p.m. when he was awakened by his mother's arrival. Alarmed at the cut on defendant's arm, she rushed him to a hospital where he was examined and treated by Dr. James Byrum, Jr. Dr. Byrum testified that he found defendant clearly under the influence of some type of drug, belligerent and difficult to manage. Although he noted that defendant's neurological and motor faculties were affected to some extent by the drug, he felt defendant still was able to know and comprehend the situation around him.

The jury found defendant guilty of breaking and entering and larceny. From judgment imposing prison sentence as a committed youthful offender, he appeals.

*Attorney General Edmisten, by Associate Attorney Elizabeth R. Cochrane, for the State.*

*David B. Hough for defendant appellant.*

BRITT, Judge.

Defendant assigns as error the denial of his timely made motion for nonsuit. We hold that the evidence was more than sufficient to survive the motion, therefore, the assignment is overruled.

[1] Defendant assigns as errors the failure of the court to give requested jury instructions to the effect that "[i]f, as a result of a drugged condition, the defendant did not have the required specific intent," or "did not have the physical capability or motor skills to engage in" the alleged breaking and entering or the larceny, the jury should find him not guilty. We find no merit in the assignments.

To be entitled to a special instruction, the request must be in writing, signed by counsel, and tendered to the court prior to the beginning of argument to the jury. G.S. 1-181. The proffered instruction must also contain a correct legal request and be pertinent to the evidence and the issues of the case. *Calhoun v. Highway Comm'n,* 208 N.C. 424, 181 S.E. 2d 271 (1935). Here, the requested instruction not only failed to contain a correct legal request but was not sufficiently pertinent to the evidence and the issues in the case.

Decisions from the appellate division of this jurisdiction relating to the ability of a defendant to form a specific intent for the reason that he was under the influence of drugs are few; however, decisions relating to the inability to form an intent due to being under the influence of intoxicants are numerous, and we think the rules applicable to the latter apply to the former.

In order to vitiate criminal responsibility, drug usage must present something more than mere voluntary intoxication. Our cases have long held voluntary intoxication an insufficient basis to excuse criminal conduct. *State v. Tillman,* 22 N.C. App. 688, 207 S.E. 2d 316 (1974). To excuse criminality the additional element of mental defect or disease must be present or the accused must show that his faculties were so overcome by drug or drink that he was "virtually unable" to form the requisite level of intent. *State v. Bronson,* 10 N.C. App. 638, 179 S.E. 2d 823 (1971). North Carolina strictly adheres to the McNaughten or right-wrong test of criminal responsibility. *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973), *cert. denied,* 414 U.S. 1042, 38 L.Ed. 2d 334, 94 S.Ct. 546 (1973).

In *State v. Cureton,* 218 N.C. 491, 495, 11 S.E. 2d 469, 471 (1940), we find:

> "While intoxication is an affirmative defense no special plea is required. However, to avail the defendant and require the court to explain and apply the law in respect thereto, there must be some evidence tending to show that the defendant's mental processes were so overcome by the excessive use of liquor or other intoxicants that he had temporarily, at least, *lost the capacity to think and plan.* As to this, he is not relegated to his own testimony. It is sufficient if the testimony of any witness tends to establish the fact. But it must be made to appear affirmatively in

some manner that this defense is relied upon to rebut the presumption of sanity before the doctrine becomes a part of the law of the case which the judge must explain and apply to the evidence." (Emphasis ours.)

Defendant's argument under the facts in the instant case is somewhat novel. Our Reports reveal many cases in which an intoxicated defendant broke into and entered a dwelling or other building and was found therein, but there was no evidence that he committed a felony after entry. In such case, there is a real issue as to whether the defendant entered the premises with the intent to commit a felony therein. Here, the evidence tended to show not only a breaking and entering but the commission of a felony following the entry.

Assuming, *arguendo,* that the instructions requested by defendant would ever be appropriate where the breaking and entering is followed by the commission of a felony after entry, we do not think the instructions were required under the evidence in this case. As stated above, being under the influence of intoxicants or drugs is an affirmative defense, and to require the court to explain and apply the law with respect thereto, there must be threshold evidence tending to show that defendant's mental processes were so overcome that he had, at least temporarily, "lost the capacity to think and plan." *State v. Cureton, supra.*

While there was evidence tending to show that defendant was not acting normally at school, that he was unsteady on his feet, that he appeared to be very sleepy and his speech was impaired, there was no evidence that he did not have the capacity to think and plan. His own testimony was to the effect that he prepared his lunch and did other things requiring both thought and execution. Other testimony fully justified a jury finding that after he got home from school, defendant devised and executed a plan to enter the Squires' apartment by crossing the rail on the balcony separating the Squires' premises from the Scales' premises, breaking the glass in the door, entering the apartment, disconnecting the television and stereo equipment, removing it and other property onto the balcony, across the rail, and into his room in his mother's apartment.

We hold that defendant was not entitled to the requested instructions.

When the State presented evidence showing that on the same day of the alleged offenses the stolen property was found in defendant's bedroom, there arose a presumption of fact that defendant was guilty of both the larceny and the breaking and entering. *State v. Blackmon,* 6 N.C. App. 66, 169 S.E. 2d 472 (1969), and cases therein cited. Defendant then had the burden of rebutting the presumption. This he failed to do.

[2]   Finally, defendant contends that the trial court erred by entering judgment imposing prison sentence on him as a committed youthful offender for a maximum term of four years without a set minimum term. On this contention, defendant relies on G.S. 148-42. We find no merit in the contention.

Defendant was sentenced pursuant to G.S. 148-49.4 as a committed youthful offender. This statute specifically provides for incarceration without a set minimum term. *State v. Jones,* 26 N.C. App. 63, 214 S.E. 2d 779 (1975). The precise duration of the term is to be determined by the Parole Commission on an individualized basis consistent with the goals of the juvenile justice system. *State v. Mitchell,* 24 N.C. App. 484, 211 S.E. 2d 645 (1975).

We conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges HEDRICK and MARTIN concur.