STATE v. AVERY KALE.

(Decided April 25, 1899).

*Indictment for Murder—1st and 2nd Degree—Voluntary Intoxication.*

1. Voluntary drunkenness is never an excuse for the commission of a crime.
2. If one charged with murder has premeditated and deliberately formed the intention to kill, and did kill the deceased, when drunk, the offence is not reduced to murder in the second degree.
3. Of course, the killing and its manner, the intent, intoxication, how it comes about, and for what purpose drunkenness takes place, and the like, are questions for the jury under the Court's instructions as to the law applicable thereto.

INDICTMENT for murder of George Travis, tried before *Coble, J.,* at Fall Term, 1898, of the Superior Court of CATAWBA County.

The prisoner and deceased were in the employment of A. S. Alley, who ran a government distillery in Catawba County in 1898. There was evidence that the prisoner entertained bad feelings towards the deceased, on account of the deceased having supplanted him in his position at the distillery, and because of his being a witness on an indictment at Court against him.

The prisoner was given to bad spells of drinking and had repeatedly uttered threats against the deceased.   On 13th August, 1898, the prisoner had been drinking some, and went with his gun to the still house inquiring for George Travis and threatening to kill him.   Travis was in the still house and in about two minutes after prisoner had entered the report of a gun was heard inside, and prisoner came out saying he had killed the d——d scoundrel.   Travis was found by witness who immediately entered the still house, mortally wounded with shot in the head and unconscious.   He died the next day.   The prisoner left the State and was brought back from Florida by the sheriff.

No evidence was offered on part of the defense.

His Honor gave all the special instructions asked for by the prisoner except the 5th which was refused; it was as follows:

5th. That if the jury believe from the evidence that the defendant had been drinking to excess during the week in which the homicide occurred; that at the time of the committing the homicide was intoxicated, and by reason of these facts, they believe that the homicide was the rash act of a drunken man, rather than the vicious act of a sober man, then the prisoner would not be guilty of murder in the first degree.

To the refusal of his Honor to give this special instruction the prisoner excepted.   The charge of his Honor was very elaborate—defined the various grades of homicide, and presented the case in its various phases presented by the evidence to the consideration of the jury, and elicited the *encomium* expressed in the opinion of its faithful compliance with Section 413 of The Code relating to the duty of a trial Judge.

The jury rendered a verdict of guilty of murder in the first degree.

The sentence of death was passed upon the prisoner—and he appealed.

124—52

*Messrs. Feimster & Yount,* for appellant.

*Mr. Zeb V. Walser,* Attorney General, for the State.

FAIRCLOTH, C. J.   The defendant was indicted and convicted of murder in the first degree.   The first exception is that the Judge failed "to state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon" as required by Section 413 of The Code. This Section imposes an important duty on the Judge and one of vital interest to the defendant when on trial under a charge of a capital felony.

We have carefully read the evidence in  detail  and  the charge.   The charge is elaborate, calling attention distinctly to each grade of the offence of murder and manslaughter, with distinct instructions how the jury should find, according to their understanding and belief of the evidence.   It is a faithful compliance with Section 413, and this put the first exception out of the way.

Second exception: That his Honor erred in refusing to give defendant's fifth prayer for special instructions.   That prayer was in these words:   "That if the jury believe from the evidence that the defendant had been drinking to excess during the week in which the homicide occurred, and that at the time of committing the homicide, was really intoxicated, and if by reason of these facts they believe the homicide was the rash act of a drunken man rather than the vicious act of a sober man, then the prisoner would not be guilty of murder in  the  first  degree."   Condensed, this means if the prisoner was really intoxicated when the rash act was committed, he would not be guilty of murder in the first degree.

As a legal proposition this prayer could  not  be  given, because it leaves out of view the consideration whether the

prisoner had made himself drunk for the purpose of executing a premeditated, wicked intent to kill, or whether he availed himself a drunken condition to execute a premditated resolution to do the act.

If one voluntarily becomes drunk and kills, without justification, he is guilty of murder. *State v. Wilson,* 104 N. C., 868. The test of accountability is the ability of the accused to distinguish right from wrong and that in doing a criminal act he is doing wrong. When killing with a deadly weapon is admitted or proved the law implies malice and the burden of showing the absence of malice is upon the defendant. Drunkenness at the time the crime is committed, nothing else appearing does not repel malice nor lower the grade of the crime. The law recognizes the dethronement of reason, as in insanity for instance, as an excuse. *State v. Potts,* 100 N. C., 457. "Voluntary drunkenness is never an excuse for the commission of a crime." *State v. Keath,* 83 N. C., 626. If one charged with murder has premeditated and deliberately formed the intention to kill and did kill the deceased, when drunk, the offence is not reduced to murder in the second degree. *State v. McDaniel,* 115 N. C., 807. Of course the killing and its manner, the intent, intoxication, how it comes about and for what purpose drunkenness takes place, and the like, are questions for the jury under the Court's instructions as to the law applicable thereto.

There was evidence of the prisoner's declared purpose and intent at different times to kill the deceased, tending to show deliberate premeditation. One witness testified that the "prisoner had some bad spells when he got liquor in him.... Prisoner had several drams that day and had been drinking all the week. He got one bottle of liquor that day." This was the only evidence offered to show intoxication. No witness said he was drunk when he fired the fatal shot, and there was no evidence of provocation.

His Honor, after charging the jury as before stated, said: "The jury will consider the facts and circumstances, connected with the homicide and proved in the case, to determine whether the killing was the outgrowth of premeditation and deliberation. . . . The jury will consider all the evidence, and if the State has shown beyond a reasonable doubt that the prisoner intentionally killed the deceased ·and that he did it in pursuance of a fixed purpose and intent to kill him, joined with deliberation and premeditation, then the jury will find the prisoner guilty of murder in the first degree." When the jury were instructed to "consider all the evidence" we must assume that the evidence of drinking or drunkenness relied on by the prisoner passed in review, and was considered by the jury, that is, to what extent it existed, if at all, and its bearing upon the alleged premeditated purpose and present purpose of the prisoner, before their verdict was rendered.

We have given the case appearing in the record our best attention and fail to find anything in the course of the trial prejudicial to the prisoner's rights.

Affirmed.