STATE v. DR. G. D. GARDNER.

(Filed 1 May, 1946.)

**1. Criminal Law § 51—**

The legal sufficiency of evidence to go to the jury is for the court; its credibility, weight and significance are for the jury, upon appropriate instruction by the court respecting the degree, or intensity of proof required to convict.

**2. Homicide § 25—**

Evidence of defendant's guilt of manslaughter in an attempt at criminal abortion *held* sufficient to be submitted to the jury, but as a new trial is ordered on an exception relating to the admission of evidence, recitation of the evidence is not necessary.

3. **Criminal Law §§ 42e, 81c—Admission of entire news articles, without proper correlation for purpose of impeaching witness, held error.**

　　Two witnesses for defendant testified, in corroboration of testimony of defendant, that they saw a taxi leave the defendant's residence at the time in question, in conformity with defendant's statement as published in articles in the local papers. The articles referred to did not contain any statement relating to a taxi. The State, over objection offered in evidence the entire articles for the purpose of contradicting and impeaching the witnesses. *Held:* Since the statements of the witnesses and the news stories were not sufficiently correlated for the purpose of contradiction and impeachment, the admission of the entire news articles, which constituted second-hand evidence of the events recorded therein, was error, and since the articles contained statements prejudicial to defendant beyond those admitted by defendant in his testimony, the admission of the news articles cannot be held harmless.

APPEAL by defendant from *Sink, J.,* at January, 1946, Term of BUNCOMBE.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes, Moody, and Tucker for the State.*

*Jones & Ward and Henry Fisher for defendant, appellant.*

SEAWELL, J. The defendant was convicted of manslaughter in an attempt at criminal abortion, and sentenced to State Prison for a term of not less than three nor more than ten years. The appeal brings up his demurrer to the sufficiency of the evidence and objection to the admission of exceptive matter during the trial.

In one instance the exception to the admission of evidence seems to merit a new trial. Since the whole ground must be gone over again, we see no sufficient reason, in considering the motion for judgment as of nonsuit, to perpetuate in full in our reports tragic and morbid details, however necessary it may be to present them to the trial court. An analysis of the evidence, pointing out the inferences which may be drawn from it, is not desirable, and it is the practice of the Court to avoid it unless the exigencies of decision clearly require it.

The legal sufficiency of evidence to go to the jury is for the court; its credibility, weight and significance are for the jury, upon appropriate instruction by the court respecting the degree, or intensity of proof required to convict. Applying this rule in the present review, we are of the opinion that the evidence was properly submitted to the jury.

We direct our attention to the admission in evidence of the news accounts of defendant's arrest, and incidental circumstances contained in the *Asheville Times* and *Asheville Citizen* respectively in the issues of 25 October, 1945.

The defendant had testified in his own behalf that Mrs. Cordell, alleged victim of the criminal abortion at his hands, had been found by him upon the steps of his home in a weak condition and desperately sick about 7:00 o'clock in the morning, apparently having been brought by a taxi which he said drove rapidly out of his driveway and down the street before he could get any information about her or why she had been brought. The woman herself, he testified, was too weak and sick to give that information. He testified that he made no examination of her, and did not know what was the matter with her, but did the best he could for her until her death in his place about 1:00 o'clock the same day. The autopsy indicated instrumentation at the cervix of the uterus, and the infliction of a wound in the anterior wall of the uterus extending in a ragged tear from the cervix to the top caused, in the opinion of the testifying experts, by the use of a curette in an attempt to produce abortion. The woman was about four months advanced in pregnancy. Opinion evidence tended to show that Mrs. Cordell could not have survived the infliction of this wound for a longer period . than twenty or thirty minutes.

In this situation the following took place:

Arthur Ford, for the defense, testified that he saw a taxi coming out of Dr. Gardner's driveway between a quarter to 7:00 and 7:30 pretty fast, going down Mitchell Avenue. That he had read Dr. Gardner's statement in the paper about the taxi and discussed it with his wife—read the statement to her and told her, "One thing he did tell the truth about the taxi." Witness stated he also talked about seeing the taxi to a Mr. Crook. That Dr. Gardner came to his house, and at his request he went to the office of Dr. Gardner's lawyer and talked to him about it. Dr. Gardner's statement in the paper, witness said, mentioned the taxi. Witness was uncertain about the date he read it in the paper, whether the 23, 24 or 25; but it was sometime after Tuesday; in his opinion Wednesday evening.

C. L. Crook testified that he also read the statement of Dr. Gardner about the taxi bringing the woman to his place, and had a conversation with witness Ford about it, and Ford said, "You know I seen that taxi coming out of there, I believe it was yesterday morning or when the paper said it was." Witness said he'd read it in the paper the night before.

The State in rebuttal identified news stories concerning the arrest of Dr. Gardner appearing in the *Asheville Citizen* and the *Asheville Times* of 25 October. C. R. Sumner testified that he had written the first account of the arrest appearing on the front page of the *Citizen* of that date. The articles in the *Times* and *Citizen* were introduced in their entirety over objection and exception by defendant. They do not con-

tain a statement by Dr. Gardner such as the witness Ford claimed to have seen and commented upon with reference to the appearance of the taxi. The purpose of the introduction of the documents was to impeach the witnesses on a supposedly vital point, although the evidence appears to have been admitted without restriction to that effect.

If the State had succeeded in laying an exact basis for the evidence, so that the statement of the witnesses and the news stories could be sufficiently correlated for the purpose of contradiction and impeachment, and if the newspaper accounts had been free from prejudicial statements, the evidence might have been either admissible or harmless; but it does not clearly appear that either of these conditions actually prevailed. The State argues here that defendant had already admitted the main facts of his history contained in the articles—his conviction of crime and service in the Atlanta Penitentiary, loss of his license to practice as a physician and other damaging facts. But we have the impression that there were other statements in the news stories which were not free from prejudicial inferences, and that the summary they contained might have affected the result in a way not contemplated in their introduction, and so have fallen under the ban as second-hand evidence of the events recorded.

For error in the admission of this evidence, the defendant is entitled to a new trial. It is so ordered.

New trial.