STATE v. CHARLES KENNETH STROUD AND JOHN HENRY MILLER.

(Filed 24 May, 1961.)

**1. Criminal Law § 90—**

In the trial of two defendants for a crime, the admissions made by each, when properly restricted to the defendant making them, are competent.

**2. Criminal Law § 71—**

The court's admission of confessions in evidence, after hearing and findings, supported by evidence, that the confessions were voluntary, will not be disturbed.

**3. Criminal Law § 42—**

Articles which the evidence shows were used in connection with the commission of the crime charged are properly admitted in evidence.

**4. Criminal Law §§ 86, 87—**

Motions for continuance and for severance held properly denied.

**5. Criminal Law § 9: Conspiracy § 3—**

Criminal conspiracy is complete as to each participant from the time he enters into the unlawful agreement with knowledge of its unlawful objective, while the commission of an unlawful act pursuant to the agreement is a separate, substantive offense, and indictment will lie for either or both.

**6. Homicide § 20—**

Evidence that one defendant took the deceased to a place for the performance of an illegal abortion which caused her death and carried her body away after the operation, and that the other defendant actually performed the illegal operation, is sufficient to sustain the conviction of each of the offense of manslaughter, each being a participant in the commission of crime.

APPEAL by defendants from *Preyer, J.,* October, 1960 Term, CABARRUS Superior Court.

Criminal prosecution upon an indictment which charged the defendants with the crime of murder in the death of one Anna Ruth Bass Ammons. At the call of the case the Solicitor announced he would not ask for a verdict of guilty of murder in the first degree, but only of second degree, or manslaughter, as the evidence might warrant. Four doctors and Sheriff Roberts testified for the State. The defendants neither testified nor offered evidence. The jury returned a verdict of guilty of manslaughter as to both defendants. From the judgment imposed, both appealed.

*T. W. Bruton, Attorney General, H. Horton Rountree, Asst. Attorney General, for the State.*

*Henry L. Fisher, Llewellyn & McKenzie, for defendants, appellants.*

STATE *v.* STROUD.

HIGGINS, J. The defendants were jointly indicted and jointly tried for murder. Both were convicted of manslaughter. According to the medical evidence, Anna Ruth Bass Ammons ". . . died directly as a result of pulmonary air embolism. . . . It (death) was directly caused by an attempted abortion . . . Pulmonary air embolism is always followed immediately by death, in a matter of seconds. . . . There are many ways, seven or eight, in which air may get into the blood stream. In this particular case there was only one way it could because there was no other evidence. In this case air had to have been, on the basis of our findings, injected into the uterus under pressure, and this air immediately is picked up by the veins of the uterus. The air is then transmitted immediately . . . to the vein of the heart . . . where it creates a turmoil so that blood cannot circulate in the heart. From there it goes into the lungs and completely stops the circulation, . . . and from that moment death is instantaneous, . . ."

Sheriff Roberts questioned the defendant Stroud on the evening of Mrs. Ammons' death. This is the substance of Stroud's statement: He first met Mrs. Ammons about the middle of January, 1960, while he was delivering groceries. He had a date with her about February 14, and another in March, and frequently thereafter. He had intercourse with her "pretty regular." In May she told him she was pregnant. She asked him if he knew anyone that could perform an abortion. He told her that he did not. Two weeks later she told him she had met a fellow . . . Johnny Miller. Johnny had a friend "that could perform an abortion, so they decided that they would come to Concord to try to find Johnny."

At about 7:30 on June 14, 1960, Stroud picked up Mrs. Ammons and her five-year-old boy and on their way from Charlotte to Concord she told him she had a syringe, a catheter tube, and at her request they stopped at a grocery store where Stroud got a box of Kotex. They stopped at a garage on the Roberta Mill Road near Concord. The building was dark. Mrs. Ammons, after an unsuccessful effort at the front door, entered from a side door. Stroud kept the boy in his car outside and in a short time drove to a cafe where drinks and ice cream were purchased. Soon Miller, whom he had not previously known, came to the cafe and told him to follow. Stroud followed Miller who stopped at a service station, motioning Stroud to pull alongside. As soon as Stroud stopped, Miller opened the door of Stroud's vehicle, picked up Ruth Ammons and carried her or half dragged her, and sat her in his car, telling him (Stroud) to take the girl to the hospital and tell that she had fainted. Stroud told the Sheriff that "he had brought the girl here (from Charlotte) for an

abortion and had left her at the garage, and when he picked her up she was in that condition."

Sheriff Roberts testified that the defendant Miller made admissions to him, a part of which is here quoted: "He said that Ruth Ammons came out there . . . this man was supposed to have been there about 7:30, and he wasn't there; that they sat at the garage for a while, they didn't have any cigarettes; they got in his car and went to the cafe for cigarettes; that they came back, and he said that Ruth asked Johnny to perform the abortion, and he told her he didn't know how, . . . He said that he consented after she showed him what to do. . . . that he took a catheter tube that she had, took a clothes hanger out of his car, cut the ends off . . . and straightened it out and put the clothes hanger in the catheter, . . . put it into the mouth of the womb and then pulled the wire out of the tube, . . . took the rubber syringe, put it in the end of the catheter tube, gave it one squirt of air, turned around, went over to the sink, . . . washed his hands . . . she said, 'Johnny, I feel faint,' . . . she fell back and said, 'Oh.'" He later "took her out of his car and put her in Charles' car, and told Charles to tell them at the hospital that she had fainted."

An autopsy was performed. Medical testimony established pregnancy of about seven weeks duration, and that probably a prior unsuccessful attempt at abortion had been made.

The court was careful to instruct the jury neither to consider Stroud's admissions as evidence against Miller, nor Miller's against Stroud. As thus limited the evidence was competent. *State v. Cole,* 249 N.C. 733, 107 S.E. 2d 732; *State v. Franklin,* 248 N.C. 695, 104 S.E. 2d 837. When the State offered the evidence of Sheriff Roberts as to Miller's admissions, Miller objected on the ground they were not voluntary. After a full hearing in the absence of the jury, the trial judge held the statements were voluntary and admitted them in evidence. The evidence was ample to support the finding that Miller's admissions were voluntary. *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365; *State v. Hairston,* 222 N.C. 455, 23 S.E. 2d 885.

The defendants objected to the admission in evidence of a bloody towel, the syringe, the tube, box of Kotex, and pieces of wire. The evidence tied these items into the offense charged and made them properly admissible. *State v. Rhodes,* 252 N.C. 438, 113 S.E. 2d 917; *State v. Vann,* 162 N.C. 534, 77 S.E. 295. The motions for continuance and for severance were properly denied. *State v. Ipock,* 242 N.C. 119, 86 S.E. 2d 798; *State v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670.

The evidence introduced at the trial disclosed an understanding between Mrs. Ammons and the defendant Stroud that an abortion should be performed. Mrs. Ammons ascertained that Johnny Miller

had a friend who would perform the operation. For that purpose Stroud "picked up" Mrs. Ammons and her five-year-old son and drove them from Charlotte to Concord. Mrs. Ammons had a syringe, a catheter tube, and she needed a box of Kotex. This Stroud bought on the way. Mrs. Ammons entered Miller's garage from a side door at a time when the building was unlighted. Stroud, with full knowledge of what was intended, waited a short distance away. Miller's friend, expected about 7:30, did not show up. At Mrs. Ammons' request, Miller attempted the operation, with the fatal result. Immediately he sought out his codefendant and transferred the body from his to Stroud's automobile. Stroud took it to the hospital where the autopsy was performed. The active participants in the plan were Mrs. Ammons, Stroud and Miller.

The defendants were not indicted for conspiracy, the gravamen of which is an unlawful agreement. The crime is complete as to each participant from the time he enters into it knowing of its unlawful objective. Making the unlawful plan is conspiracy. Carrying it out is a separate — a substantive offense. Indictment will lie for either, or both. *State v. Hedrick,* 236 N.C. 727, 73 S.E. 2d 904; *State v. Wrenn,* 198 N.C. 260, 151 S.E. 261.

The State's evidence made out a case of manslaughter against both defendants. Stroud took the deceased to the place for the unlawful act, kept her son while it was performed, carried her body away. Miller performed the act. Each defendant played a willing, though different part. *State v. Gardner,* 226 N.C. 310, 37 S.E. 2d 913; *State v. Layton,* 204 N.C. 704, 169 S.E. 650.

We have examined the many assignments of error. They are without merit.

No error.