STATE v. TERRY SNEEDEN
No. 496

(Filed 27 November 1968)

**1. Rape § 1— elements of the offense**

Carnal knowledge of a female forcibly and against her will is rape, the slightest penetration of the sexual organ of the female by the sexual organ of the male amounting to carnal knowledge in the legal sense.

**2. Criminal Law § 71; Rape § 4— testimony that defendant "raped" prosecutrix**

Where the prosecutrix had testified positively and unequivocally as to each element of the crime of rape, testimony by the prosecutrix that when she regained consciousness defendant was "in the act of raping" her *is held* competent as a shorthand statement of the events to which she had already testified.

**3. Criminal Law § 33— evidence admissible**

In criminal cases, every circumstance that is calculated to throw any light upon the supposed crime is admissible.

**4. Criminal Law § 42; Rape § 4— weapon used in connection with the crime**

In a prosecution for rape, the court properly admitted into evidence a rifle found in defendant's possession the night of the crime where there was evidence tending to show the gun was used in connection with the crime charged.

**5. Criminal Law § 130— conversation between bailiff and jury foreman**

While it is not improper for the jury foreman to indicate to the bailiff that the jury desires further information from the court, it is improper for the bailiff to assume the role of judge and attempt to furnish the information.

**6. Criminal Law § 130— mistrial for jury misconduct**

Motion for a mistrial or a new trial based on misconduct affecting the jury is addressed to the discretion of the trial judge, and his ruling thereon will not be disturbed unless it is clearly erroneous or amounts to a manifest abuse of discretion.

**7. Criminal Law § 130— new trial for misconduct of jury**

A criminal verdict will not be disturbed because of a conversation between a juror and a third person when it does not appear that any injustice was done to defendant and he is not shown to have been prejudiced thereby.

**8. Criminal Law § 130— denial of motion for mistrial for misconduct of jury**

Denial of motions for a mistrial and for a new trial based on asserted misconduct affecting the jury is equivalent to a finding by the trial judge that prejudicial misconduct has not been shown.

**9. Criminal Law § 130— conversation between bailiff and jury fore-
man as to parole possibility — new trial denied**

In a prosecution for rape, no abuse of discretion is shown in the court's
denial of defendant's motions for a mistrial and for a new trial where
the bailiff, in reply to a question by the jury foreman during the jury's
deliberations as to how quick parole was possible, informed the jury fore-
man that such "has nothing to do with the evidence," there being noth-
ing in the conversation between the bailiff and the jury foreman to show
injury to the defendant or to afford any reasonable ground upon which to
attack the fairness of the trial or the integrity of the verdict.

APPEAL by defendant from *Bickett, J.,* March 1968 Regular Crim-
inal Session of WAKE County Superior Court.

Defendant was tried upon a bill of indictment charging him with
the capital crime of rape. The jury returned a verdict of guilty and
recommended life imprisonment. Sentence was pronounced accord-
ingly, and defendant appealed to the Supreme Court.

The State's evidence — defendant offered none — tends to show
that on September 17, 1967, Mary Jo Welch was returning by bus
from her home in Burlington to East Carolina University at Green-
ville where she was a sophomore. She arrived in Raleigh at 6 p.m.
and, having a one hour layover, entered the bus station restaurant
for food and drink. She then spent some time in the waiting room
and gift shop where she noticed defendant watching her. He finally
approached her and introduced himself as a graduate student at
East Carolina University working on a Master's degree and doing
a thesis on penal institutions. He told her he worked for the North
Carolina Prison Department and also a rent-a-car business on week-
ends. Defendant invited Miss Welch to ride with him and his brother
as they were also returning to East Carolina. She at first declined
but later, upon his insistance and assurances, accepted. Defendant
reclaimed Miss Welch's baggage and placed it in his car parked
nearby. He then drove to the Econo-Car Rental Office a block away
and, after making a telephone call, informed Miss Welch that he
had a problem with a rented car and had to take the client another
vehicle. At his request she followed defendant in a second car. De-
fendant finally turned off the main road, stopped his vehicle, and
told her he was to meet the client farther down the road and that he
would go down to appraise the situation. He instructed her to follow
in ten minutes if he had not returned. It was then 7 p.m. and still
light. When he did not return, she drove down the dirt road as in-
structed. At the end of the road, defendant told her the client had
not arrived but was coming to take him to the disabled car. From
time to time she asked when the client was coming. Defendant went

STATE *v.* SNEEDEN

into an old cottage nearby, used for fishing and hunting parties, and made some telephone calls. The bugs and mosquitos were getting bad, and defendant suggested they go inside the cottage to wait. She at first declined but finally went inside to avoid the mosquitos. It was not yet dark. They conversed about defendant's job at the Prison Department and its connection with his Master's degree. Defendant produced a rifle from an adjoining room, put it to her shoulder and demonstrated how to hold it. He asked if she had ever been taught ways to defend herself. He pointed the gun at her and said, "What would you do if I were to point this gun at you and tell you to take your clothes off?" She replied, "Well, if it were you I would probably laugh." Defendant told her he would not do that, took the gun away, and put it in the adjoining room. He returned and pulled her down on some kind of bunk bed and held her so she could not move. She asked him to let her up and he did. She started walking to the door when he again pulled her down and placed his body on hers so she could not move. He refused to let her up. She screamed and yelled and asked to be released. Defendant smothered her with his hand and said, "Shut up or I'll kill you." She calmed herself and he removed his hand from her mouth and nose. Defendant then told her to remove her pants, and she began screaming, became hysterical, and then felt a blow on the head. Thereafter, according to her testimony, "she didn't remember what happened after that until I guess I came to and he was in the act of raping me." She went into hysterics and evidently passed out. Upon regaining consciousness, defendant entered from the adjoining room, helped her up, and assisted her into the kitchen. He wanted to take her to the police, but she asked him to take her back to school. Then he said he would take her to the hospital because her head was bleeding. He said, "I hit you hard and you are bleeding very bad and you have got to go to the hospital and have it fixed." He helped her to the car and placed the rifle in the back seat. She was afraid he was taking her out to shoot her. He refused to take her back to school because she had so much blood on her and finally took her to a motel where she could bathe and remove the blood. He registered for a room at the motel, took her in, brought her suitcase from the car, and told her to take a shower, which she did. At that point defendant telephoned his wife and said, "Jane, I've got something to tell you, Jane, I have raped a girl and hurt her very bad." Miss Welch then spoke to defendant's wife on the phone. They drove to defendant's home where his wife looked at the wound on Miss Welch's head and told defendant to stay there while she took Miss Welch back to school. After they got in the car, Miss Welch related what had happened and defendant's wife took her to

the police station. It was then 12:30 a.m. Miss Welch was taken to the hospital and, after treatment, returned to the police station where she gave a written statement of what had taken place.

Deputy Sheriff C. L. Beddingfield was bailiff on duty in Wake Superior Court during the trial of this case. After the case had been submitted to the jury and during its deliberations, there was a knock on the door to the jury room and the bailiff, who was standing duty outside the door, opened it. The foreman asked if he could ask the bailiff a question. The bailiff told him he could not answer a question. The foreman then said, "We want to know how quick a parole was possible." The bailiff replied, "It has nothing to do with the evidence." Nothing else was said. The bailiff then reported the episode to the judge.

The jury returned a verdict of guilty and recommended life imprisonment. Judgment was pronounced accordingly, and defendant appealed to the Supreme Court assigning errors as noted in the opinion.

*George M. Anderson and E. Ray Briggs, Attorneys for defendant appellant.*

*T. Wade Bruton, Attorney General, and George A. Goodwyn, Assistant Attorney General, for the State.*

HUSKINS, J.

Defendant assigns as error the refusal of the court to strike the statement by the prosecuting witness Mary Jo Welch that after she felt something hit her on the head she didn't remember what happened until "I guess I came to and he was in the act of raping me." Defendant argues that the statement is a conclusion of the witness which invaded the province of the jury and should have been excluded.

[1, 2]  Carnal knowledge of a female forcibly and against her will is rape. *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232. The slightest penetration of the sexual organ of the female by the sexual organ of the male amounts to carnal knowledge in a legal sense. *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513. Here, the evidence of the prosecuting witness is positive and unequivocal as to each and every element of the crime — force, penetration, and lack of consent. Viewed in context, the statement of the prosecuting witness that when she regained consciousness defendant was in the act of raping her was merely her way of saying that he was having intercourse with her. She was not expressing her opinion that she had been raped. Rather,

she was stating in shorthand fashion her version of the events to which she had already testified. Stansbury, N. C. Evidence 2d ed., § 125. Compare *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469. It is inconceivable that the jury could have construed it otherwise, and its admission was not error.

Defendant's next assignment of error relates to the introduction, over objection, of the rifle found in defendant's possession on the night of September 17, 1967. Defendant contends the rifle was not used in connection with the crime charged against him and therefore has no bearing on the question of his guilt.

**[3]** In criminal cases, ". . . every circumstance that is calculated to throw any light upon the supposed crime is admissible." *State v. Hamilton,* 264 N.C. 277, 286, 141 S.E. 2d 506, 513. Articles shown by the evidence to have been used in connection with the commission of the crime charged are competent and properly admitted in evidence. *State v. Stroud,* 254 N.C. 765, 119 S.E. 2d 907; accord, *State v. Payne,* 213 N.C. 719, 197 S.E. 573.

"So far as the North Carolina decisions go, any object which has a relevant connection with the case is admissible in evidence in both civil and criminal trials. Thus, weapons may be admitted where there is evidence tending to show that they were used in the commission of a crime or in defense against an assault." Stansbury, N. C. Evidence 2d ed., § 118.

In *State v. Harris,* 222 N.C. 157, 22 S.E. 2d 229, the rape victim had been struck on the head. A brick with hairs clinging to it, found near the scene, was held properly admitted. A knife with which a rape victim was threatened and cut was held properly admitted in *State v. Bass,* 249 N.C. 209, 105 S.E. 2d 645.

**[4]** In the case before us, there is evidence tending to show that after defendant had lured his victim into the front room of a secluded cabin he went into an adjoining room and came back with a rifle. During the conversation about the gun, defendant pointed it at Miss Welch and said, "What would you do if I were to point this gun at you and tell you to take your clothes off?" She answered in jest although feeling apprehensive, and he said, "Don't worry I won't" and lowered the gun and took it back to the other room. Shortly thereafter he forced her down on a bunk bed and, after rendering her unconscious by a blow on the head, sexually assaulted her. Then he took the rifle along on the trip to the motel. On that trip she testified that all she could think about was the gun in the back seat and expressed her fear that he would shoot her. Thus, there is

evidence tending to show that the gun was used in connection with the commission of the crime charged, and it was admissible in evidence. It had a subtle intimidating significance to the victim and apparently served as a silent persuader. In any event, it had a relevant connection with the case, and its admission was not error.

[9]   Finally, defendant assigns as error the denial of his motions for a mistrial and for a new trial based upon a conversation between the bailiff and the jury foreman. After the case had been submitted to the jury and during its deliberations, the bailiff opened the door to the jury room in response to a knock on the door. The bailiff testified under oath as follows: "The foreman asked me if he could ask me a question. I told him I could not answer a question. He says 'We wanted to know how quick a parole was possible.' I says 'It has nothing to do with the evidence.' And I reported it to the judge." Nothing else was said.

[5]   The bailiff should have declined to answer the foreman's question and should have taken the jury to the courtroom where the presiding judge, if he deemed proper, could further instruct it. "Contacts between court officers and jurors, except as authorized by the court in appropriate circumstances, are not to be countenanced since no justification should be given for arousing suspicions as to the sanctity of jury verdicts." 89 C.J.S., Trial § 457(f). While it is not improper for the jury foreman to indicate to the bailiff that the jury desires further information from the court, it is improper for the bailiff to assume the role of judge and attempt to furnish the information. The legal significance of such improper conduct and the question of prejudicial effect largely depends upon the nature of the communication. See Annot., Communication with Jurors—Prejudice, 41 A.L.R. 2d 288.

In *Gaither v. Generator Co.*, 121 N.C. 384, 28 S.E. 546, the sheriff declined to provide the jury with refreshments except water and told the jurors they must wait until they agreed on a verdict or until the judge told him to take them to dinner. Such conduct was held not prejudicial.

In *State v. Burton*, 172 N.C. 939, 90 S.E. 561, the officer having the jurors in charge told them on Friday that the judge would keep them together until Sunday if they did not agree earlier. Such conduct was held insufficient for a new trial, even if the judge had authorized the officer to so inform the jury.

In *State v. Adkins*, 194 N.C. 749, 140 S.E. 806, the officer in charge of the jury during its deliberations informed the jurors that

defendant with his wife and daughter had endeavored to obtain lodging in the same boardinghouse with them. The finding of the trial judge that the verdict had not been influenced or tainted by the misconduct of the officer was upheld.

[6]　Motions for a mistrial or a new trial based on misconduct affecting the jury are addressed to the discretion of the trial court. *In Re Will of Hall*, 252 N.C. 70, 113 S.E. 2d 1. Unless its rulings thereon are clearly erroneous or amount to a manifest abuse of discretion, they will not be disturbed. *Stone v. Baking Co.*, 257 N.C. 103, 125 S.E. 2d 363; *O'Berry v. Perry*, 266 N.C. 77, 145 S.E. 2d 321; *Keener v. Beal*, 246 N.C. 247, 98 S.E. 2d 19. "The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge." *Lewis v. Fountain*, 168 N.C. 277, 279, 84 S.E. 278, 279.

[7]　The great weight of authority sustains the rule that ". . . a verdict will not be disturbed because of a conversation between a juror and a stranger when it does not appear that such conversation was prompted by a party, or that any injustice was done to the person complaining, and he is not shown to have been prejudiced thereby, and this is true of applications for new trial by the accused in a criminal case as well as of applications made in civil actions. . . . [A]nd if a trial is really fair and proper, it should not be set aside because of mere suspicion or appearance of irregularity which is shown to have done no actual injury. Generally speaking, neither the common law nor statutes contemplate as ground for a new trial a conversation between a juror and a third person unless it is of such a character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented by the evidence in the courtroom, or is of such a nature as is calculated to result in harm to a party on trial. The matter is one resting largely within the discretion of the trial judge." 39 Am. Jur., New Trial, § 101. This statement of the rule is quoted with approval by Parker, J., now C.J., in *Stone v. Baking Co.*, *supra* (257 N.C. 103, 107, 125 S.E. 2d 363, 366). See Annot., Juror-Communication with Outsider, 64 A.L.R. 2d 158.

[8]　Denial of such motions is equivalent to a finding by the trial judge that prejudicial misconduct has not been shown. *Farmer v. Lands*, 257 N.C. 768, 127 S.E. 2d 553; *Stone v. Baking Co.*, *supra*.

[9]　The burden is on the appellant to show prejudicial error amounting to a denial of some substantial right. 1 Strong's N. C. In-

dex 2d, Appeal and Error, § 46; *State v. Shedd,* 274 N.C. 95, 161 S.E. 2d 477. Here, there is nothing in the conversation between the bailiff and the jury foreman to show injury to the defendant or to afford any reasonable ground upon which to attack the fairness of the trial or the integrity of the verdict. Upon the facts shown, the trial judge was not required as a matter of law to order a mistrial. Furthermore, no abuse of discretion has been made to appear.

The verdict and judgment will be upheld.

No error.